Common Pleas Court of Hamilton County.

## WOODWARD V. GRAY.

Decided February 5, 1932.

*Dolle, O'Donnell & Cash,* for the motion.
*August A. Rendings,* contra.

DARBY, J.

The plaintiff urges two grounds for setting aside the verdict of the jury, namely—

That the verdict is contrary to the evidence; and

That the court erred in giving special charge No. 6 requested by the defendant.

Briefly stated, the plaintiff's claim was that the defendant was driving his automobile in a northerly direction on the Central Parkway, approaching Elder street in Cincinnati, about half-past eight on the evening of July 10, 1930; that the two children of the plaintiff had crossed from the westerly side of the Parkway to the easterly side, at the juncture of Elder street with the Parkway; that immediately after the children, with their companion who

was an adult, had reached the easterly side of the Parkway, the younger child, two and a half years of age, turned and ran into the street in an effort to get back to the westerly side of the Parkway where her mother was.

The plaintiff claimed that the defendant drove his automobile at a speed greater than was reasonable or proper; that he failed to see the plaintiff as she was crossing the street, and failed to stop his automobile before striking her.

When the child ran into the street from the easterly side, and directly into the path of automobiles approaching from the south, the mother left the easterly side and ran across the Parkway in an effort to reach the child and prevent her injury, but before she reached the child she (the plaintiff) was struck by defendant's automobile and injured.

The defendant denied any negligence on his part, and stated that he saw the woman and the two children cross to the easterly side, and then the child started to run across the street and he slowed his car, swerved to the left and missed the child; that his attention was directed to the child only, and he did not see the plaintiff until she was immediately in front of his car, when plaintiff was struck and the car of the defendant stopped almost instantly.

For a proper consideration of this case it is necessary to consider the evidence as to the place at which the accident happened.

The witness Mr. Mobley testified on behalf of the plaintiff as to the place of the accident. His statement was that the plaintiff went directly across the street opposite the south side of Elder street (Elder street beginning at the east side of the Parkway and extending eastwardly), and he also testified that when the plaintiff was struck she was pushed, or slid, ten feet farther to the north, and that he and others helped to carry her directly to the easterly sidewalk.

Mr. Woodward, the husband of the plaintiff, was not present at the scene of the accident, but came up shortly after, and his statement was that when he arrived there

he found that the plaintiff was at a point some thirty or forty feet south of the south side of Elder street.

Three witnesses who were disinterested, testified for the defendant as follows: Mr. and Mrs. Overstreet, who were standing north of Elder and looking in a southerly direction, said that the plaintiff was struck about 150 feet south of Elder street; Mr. Simpson, who was driving a car immediately behind that of the defendant, also testified that the striking occurred about 100 or 150 feet south of Elder street. This is important as reflecting upon the conduct of the defendant in the case. His testimony is that he stopped at Liberty street, the next street south of Elder, for the traffic light; that a number of cars were there, and upon the green light flashing he started northwardly, and when he was some fifty feet away from the child he saw the child suddenly run into the street; that he applied his brakes, and then seeing that he could safely proceed by swerving to the left, he did that, passed the child, and just at that moment the plaintiff appeared in the middle of the street and directly in front of his car. He then stopped his car as it is stated by a number of witnesses, in a very few feet, some of them stating that it was stopped the instant he struck the plaintiff.

The testimony is that the woman who accompanied the child to the easterly side of the Parkway, ran out into the street to save her from being hurt, and of course the onlookers knew nothing whatever about who the woman was coming from the west side of the street, even had they seen her.

The claim of the plaintiff was based upon the theory that the defendant had by his acts of negligence, put the child in jeopardy, and that the plaintiff, in running into the street and into the place of danger, was using not only care, but the natural and proper instincts of a mother in seeking to save her child.

It is clear from his testimony, that the defendant's whole attention was directed towards the child, and that he slowed and swerved his car to the left to avoid injuring the child, and succeeded in doing so. Had he neither stopped nor swerved to the left, he would have struck the

child, but swerving to the left he came in contact with the plaintiff at a point midway between the two streets, Liberty and Elder, and that he did not see her coming across the street at that moment because his attention was directed to the child. As soon as he did see the plaintiff, he immediately stopped his car.

The overwhelming evidence in the case is that the accident did not occur opposite Elder street, but that it did occur in the middle of the block, and at a point where no one would have reason to expect persons to cross the street. The evidence was that there was north and south traffic at about this time.

At the conclusion of the plaintiff's evidence the defendant moved for an instructed verdict, in a manner that the court could hardly have believed the motion to have been seriously made, though later the defendant strenuously argued that no act of negligence on the part of the defendant had been shown. The motion was made in these words (Record, p. 120):

"I would like to make the usual motion. I suppose Your Honor won't consider it very seriously."

It is somewhat difficult to separate the discussion of the evidence from the charge to which exception is so strenuously taken. The charge, which was No. 6 asked by the defendant, is in these words:

"I charge you that where one, without fault of his own, is placed in a position of great mental stress or sudden emergency, the same degree of judgment and care is not required of him as is required of one who is acting under normal conditions. The test to be applied is whether the person in such a position of great mental stress or sudden emergency, did or attempted to do what a reasonably prudent person would have done under the same or similar circumstances.

"If, therefore, you find from the evidence in this case, that the defendant without fault of his own, was placed in a position of great mental stress or sudden emergency, and that while in such position he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances, then he was not negligent."

This charge is criticized by counsel for the plaintiff as misleading the jury, and not stating the correct rule in a case of this character.

It seems to the court that counsel for the plaintiff has confused the testimony of the defendant as to whether or not he thought there was an emergency.

There were questions asked of the defendant as to whether he put on his emergency brake. He stated that he did not, because there was no necessity for doing so, and his foot brake was in good condition, brought the car to a stop, and that there was no emergency requiring him to use his emergency brake. He did not say that there was no emergency; on the contrary his claim was that the child ran into the street, directly into the path of his car, that he slowed his car and swerved to prevent hitting the child, and then came in contact with the plaintiff, who had run from the other side of the street in the middle of the block, causing her injury.

This charge seems to the court to be fully justified by the case of *Penn. Ry. Co.* v. *Snyder,* 55 O. S., 342, and especially on p. 364; also by *Citizens Motor Car Co.* v. *Hamilton,* 12 C. C. (N. S.), 231; 1 Berry on Automobiles, Sec. 229, and the holding of the Court of Appeals in *Driskill* v. *Buettner,* 175 N. E., 893. In the latter case the court held a charge of this character to be correct in a proper case, but that the difficulty with the charge in that case was that the court assumed facts to be true which were matters for the decision of the jury. No such situation occurs in this case, but that charge was carefully guarded, leaving the matter entirely for the consideration of the jury.

The court is unable to see, therefore, that there is anything erroneous about this charge, or in giving it in this case, and the court is also unable to see how plaintiff can justify her claim, that the defendant was asserting that he was not placed in an emergency and did not have to act with the utmost care to avoid the child. It was not necessary for him to stop, which was demonstrated by the fact that he safely passed the child, and as his attention was riveted upon the child, it is difficult to see how he

could be held to be guilty of negligence in doing the natural thing under the circumstances, and in the place where it happened.

The evidence was that a number of cars were passing at the time, and that the defendant was near the center of the street, and other cars passing him, which if they passed on the right side of the street must necessarily have passed on his right, in lanes provided for that purpose.

It was a deplorable accident, in which without any question, the court must approve the course of the plaintiff in seeking to save her child under the circumstances, but the situation is not such as to justify the court in setting aside the verdict rendered after mature deliberation by the jury, and upon a full charge as to the law of the case.

It might be said further, that the court refused to give special instructions asked for the defendant, giving the ordinary rules as to contributory negligence on the part of the plaintiff, but held the case strictly within the principle laid down in the case of *Penn. Ry. Co.* v. *Langendorf*, 48 O. S., 316, the syllabus of which is as follows:

"1. It is not negligence *per se* for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger. The question whether one so acting should be charged with contributory negligence, in an action brought by him to recover damages for injuries received in attempting the rescue, is one of mixed law and fact, and should be submitted to the jury upon the evidence, with proper instructions from the court.

"2. While one who rashly and unnecessarily exposes himself to danger cannot recover damages for injuries thus brought on himself, yet, where another is in great and iminent danger, one who attempts a rescue may be warranted by surrounding circumstances in exposing his limbs or life to a very high degree of danger. And in such cases he should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment.

"3. In such cases, if the rescuer does not rashly and unnecessarily expose himself to danger, and his injury, the injury should be attributed to the party that negligently, or wrongfully, exposed to danger, the person who required assistance."

The motion for new trial will therefore be overruled.